IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS S. CHILDS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-2303-D |
| VS. | § | |
| | § | |
| THOUSAND OAKS AT AUSTIN | § | |
| RANCH, et al., | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this *pro se* action by plaintiff-counterdefendant Thomas S. Childs ("Childs") alleging claims for breach of contract and violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, defendant-counterplaintiff Billingsley Property Services, Inc., a/k/a Thousand Oaks at Austin Ranch ("Billingsley")[1] moves to amend its answer and for summary judgment. For the following reasons, the court grants Billingsley's motions, dismisses Childs's suit, and enters judgment for Billingsley on its counterclaim for breach of contract.

---

[1]Childs's complaint alleges that "Billingsley Property Services, Inc." and "Thousand Oaks at Austin Ranch" are two separate entities. In Billingsley's motion, it essentially treats "Thousand Oaks at Austin Ranch" as an assumed named for Billingsley. Because Childs does not appear to dispute Billingsley's treatment of both entities as a single party, the court will refer to Billingsley as the sole defendant-counterplaintiff.

I

Billingsley is the property manager for an apartment complex known as Thousand Oaks at Austin Ranch ("Thousand Oaks").[2]  Childs leased an apartment at Thousand Oaks from January 3, 2013 to February 2, 2014 (the "Lease").  On January 9, 2014, before the Lease expired, Childs vacated his apartment, allegedly to avoid being evicted.  Billingsley sent Childs a "Move Out Statement," invoicing Childs for $2,170.38 in unpaid rent and other charges (the "Lease Debt").  Childs asserts that he disputed the validity of the Move Out Statement in an email to which Billingsley did not respond.

Billingsley submitted the Lease Debt to NCC Business Services of America, Inc. ("NCC"), a third-party debt collector, for collection.  Billingsley contends that NCC reported the Lease Debt to various credit reporting agencies, including Experian.  Childs sent a letter to Billingsley disputing the charges in the Move Out Statement and attempting to negotiate a settlement of the Lease Debt.  Childs maintains that Billingsley failed to update its reporting to note his dispute.

Childs notified NCC that he disputed the Lease Debt by letter and by complaint filed with the Consumer Financial Protection Bureau.  NCC, in turn, notified Billingsley that Childs disputed the Lease Debt, and, in its response to NCC, Billingsley acknowledged that

_____

[2]In deciding this motion, the court views the evidence in the light most favorable to Childs as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

the Lease Debt was disputed.  NCC notified the four Credit Reporting Agencies—Experian,

Equifax, TransUnion, and Innovis—to delete the Lease Debt from Childs's credit record.

Childs then brought this lawsuit against Billingsley alleging claims for breach of

contract and for negligent and willful violations of the FCRA.  In its answer, Billingsley

asserts a counterclaim for multiple breaches of the Lease.[3]  Billingsley now moves for

summary judgment on Childs's FCRA and breach of contract claims and on its own breach

of contract counterclaim.  Childs opposes the motion.

## II

When a party moves for summary judgment on a claim on which the opposing party

will bear the burden of proof at trial, the moving party can meet its summary judgment

obligation by pointing the court to the absence of admissible evidence to support the

opposing party's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the

moving party does so, the opposing party must go beyond his pleadings and designate

specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air

Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) ( per curiam).  An issue is genuine if the

---

[3]On February 1, 2016 Billingsley filed a motion for leave to file an amended answer
and counterclaim, contending that the proposed amended answer provides supplemental
information and corrects inaccuracies in Billingsley's responses to the allegations in the
complaint.  It contends that the amended counterclaim makes no changes other than to
mention the possibility that Billingsley may choose to waive part of the damages sought in
its counterclaim.  Although Childs apparently opposes Billingsley's motion, he has not filed
a response.  Because Fed. R. Civ. P. 15(a) directs the court to "freely give leave" to amend
"when justice so requires," Childs has failed to provide the court with any reason to deny the
motion, and the changes Billingsley proposes do not affect the court's decision today, the
court grants the motion.

evidence is such that a reasonable jury could return a verdict in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The opposing party's failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory if the opposing party fails to meet this burden.  *Little*, 37 F.3d at 1076.

When a party moves for summary judgment on a claim on which it will have the burden of proof at trial, however, it "must establish 'beyond peradventure all of the essential elements of the claim or defense.'"  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F.Supp. 943, 962 ( N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that the moving party must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law.  *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'"  *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) ( Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

The court begins with Childs's FCRA claims.  Childs contends that Billingsley, as a furnisher of credit information under FCRA, negligently and willfully violated 15 U.S.C. § 1681s-2(b)(1).

-4-

A

Under § 1681s-2(b)(1), if a consumer reporting agency notifies a furnisher of credit information that a consumer disputes the reported information, the furnisher must "'review all relevant information provided by the [consumer reporting agency],' 'conduct an investigation,' 'report the results of the investigation,' and 'modify . . . delete . . . or . . . permanently block the reporting of [inaccurate or incomplete] information.'" *Jett v. Am. Home Mortg. Servicing., Inc.*, 614 Fed. Appx. 711, 713 (5th Cir. 2015) (per curiam) (second alteration in original) (quoting 15 U.S.C. § 1681s-2(b)(1)(A)-(E)).  To establish a violation of § 1681s-2(b)(1), a consumer must show, *inter alia*, that he notified the consumer reporting agency of the dispute in accordance with the procedure set forth in § 1681i(a)(2), and "that [the] consumer reporting agency . . . notified [the furnisher] pursuant to § 1681i(a)(2)" of the consumer's dispute "within five business days from the time the consumer notifies the consumer reporting agency of the dispute." *Young v. Equifax Credit Info. Servs.*, 294 F.3d 631, 639 (5th Cir. 2002) (emphasis omitted).  "Such notice [by a consumer reporting agency] is necessary to trigger the furnisher's duties under Section 1681s-2(b)." *Id.*

B

Billingsley moves for summary judgment on Childs's FCRA claims, contending, *inter alia*, that there is no evidence that Childs ever notified a consumer reporting agency of his dispute (the evidence shows only that Childs notified NCC, the debt collector hired by Billingsley); there is no evidence that Billingsley ever furnished information to a consumer reporting agency; and there is no evidence that a consumer reporting agency notified

Billingsley of Childs's dispute of the information in his consumer file about the Lease debt.

Childs responds that "[Billingsley] reported [Childs's] alleged debt to NCC as the [consumer

reporting agency]," and that he "disputed the alleged debt with NCC as the [consumer

reporting agency] and with the Defendant itself."  P. Br. 12. Childs also contends that

> NCC operates as a [consumer reporting agency] under the
> business name Tracerent—the property management division of
> NCC.  Tracerent incorporates software that builds and maintains
> databases in the ordinary course of business on consumers using
> both public information and credit account information.

P. Br. 11 (citation omitted).

## C

Assuming *arguendo* that Billingsley is a furnisher under FCRA, its duties under

§ 1681s-2(b)(1) are only triggered if a consumer reporting agency has notified it that a

consumer disputes reported information.  *See Young*, 294 F.3d at 639; *see also Manns-Rice*

*v. Chase Home Fin. LLC*, 2012 WL 2674551, at *3 (N.D. Tex. July 5, 2012) (McBryde, J.)

("The furnisher's duty to investigate is only triggered by receipt of such a notice from a

consumer reporting agency." (citations omitted)); *Davis v. Sallie Mae, Inc.*, 2009 WL

2525303, at *3 (N.D. Tex. Aug. 18, 2009) (Boyle, J.) ("While a furnisher of information may

have liability for violations of 1681s-2(b), it is clear that any liability for alleged violation

of 1681s-2(b) does not arise until a consumer reporting agency reports an inaccuracy to the

furnisher and the furnisher fails to correct the error.  Such notice is necessary to trigger the

furnisher's duties under Section 1681s-2(b)." (citations omitted)).  Because Childs has not

produced summary judgment evidence (or even alleged) that a consumer reporting agency

notified Billingsley that Childs disputed the Lease Debt, the court grants Billingsley's motion for summary judgment on Childs's FCRA claim.

Childs argues that NCC is a consumer reporting agency, as defined in 15 U.S.C. § 1681a(f),[4] and that NCC notified Billingsley that Childs disputed the Lease Debt. Childs has failed to create a genuine issue of material fact, however, on the question whether NCC qualifies as a consumer reporting agency. Section 1681a(f) defines "consumer reporting agency" as

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). In support of his response to Billingsley's summary judgment motion, Childs cites the website of Tracerent, the property management division of NCC,[5] and alleges that "NCC operates as a CRA under the business name Tracerent." P. Br. 11. The website pages he cites, however, merely describe Tracerent as a division of NCC, "a national third-

---

[4]Childs also cites the definition of "consumer reporting agency" in 15 U.S.C. § 1681a(p) and (x). These provisions defining "Consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" and "Nationwide specialty consumer reporting agency" are inapplicable, however, to Childs's claims because Childs has failed to raise a genuine issue of material fact on the question whether NCC is a "consumer reporting agency" at all.

[5]Billingsley objects to this evidence for lack of authentication and as hearsay. Because the court is not relying on this evidence in reaching its decision, Billingsley's evidentiary objections are overruled without prejudice as moot.

party debt collection agency." P. App. 14.  Childs's evidence would not permit a reasonable trier of fact to find that NCC or Tracerent "assembl[es] or evaluat[es] consumer credit information for the purpose of furnishing consumer reports to third parties," as required by 15 U.S.C. § 1681a(f).  And Childs's conclusory assertion that "NCC operates as a CRA" does not create a genuine issue of material fact.  *See, e.g., Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996))).

In sum, because Childs has failed to create a genuine fact issue on the question whether a consumer reporting agency notified Billingsley, pursuant to § 1681i(a)(2), of Childs's dispute of the Lease Debt, no duties under § 1681s-2(b)(1) could have been triggered.  *See Young*, 294 F.3d at 639.  Accordingly, Billingsley is entitled to summary judgment dismissing Childs's FCRA claims for negligent and willful violation of § 1681s-2(b)(1).[6]

---

[6]To the extent Childs intends to allege that Billingsley violated 15 U.S.C. § 1681s-2(a) by failing to update incomplete or inaccurate information it had previously reported, he has not produced any evidence that Billingsley furnished information relating to a consumer *to any consumer reporting agency*, as the statute requires.  Accordingly, Billingsley is also entitled to summary judgment on any claim brought under § 1681s-2(a).

IV

The court turns next to Billingsley's motion for summary judgment on Childs's breach of contract claim.

A

In support of his breach of contract claim, Childs alleges that "[a]n agreement in response to late payments obligated [Billingsley] to allow [Childs] to fulfill the remaining lease contract," and that Billingsley's "omissions" constitute a material breach of this agreement.  Compl. ¶ 5.14.

Billingsley moves for summary judgment on Childs's breach of contract claim, contending, *inter alia*, that no valid contract existed between Billingsley and Childs because Childs never accepted Billingsley's January 4, 2014 offer not to file an eviction suit if Childs paid $885.05 (the amount required to bring his balance under $500) by January 10, 2014 and never accepted Billingsley's January 9, 2014 offer (which had the effect of terminating or withdrawing the January 4, 2014 offer) not to file an eviction suit if Childs paid $1,202.91 by January 10, 2014.

Childs responds that by responding "Yes" in the second paragraph of his January 4, 2014 reply, he clearly accepted Billingsley's January 4, 2014 offer not to file an eviction suit if he could bring his balance under $500.00 by January 10, 2014.  He contends that Billingsley then failed to honor the January 4, 2014 offer, threatening to file an eviction suit if Childs did not pay $1,202.91 by January 10, 2014.

B

The elements of a claim for breach of contract under Texas law are "(1) the existence of a valid contract, (2) plaintiff's performance of duties under the contract, (3) defendants' breach of the contract, and (4) damages to plaintiff resulting from the breach." *Orthoflex, Inc. v. ThermoTek, Inc.*, 983 F.Supp.2d 866, 872 (N.D. Tex. 2013) (Fitzwater, C.J.) (citation omitted). "For there to be a valid contract, there must be '(1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding.'" *Erdman Co. v. USMD of Arlington GP, LLC*, 2011 WL 1356920, at *15 (N.D. Tex. Apr. 11, 2011) (Fitzwater, C.J.) (quoting *Prime Prods. v. S.S.I. Plastics*, 97 S.W.3d 631, 636 (Tex. App. 2002, pet. denied)). "'The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind.'" *In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2012) (quoting *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App. 1999, pet. denied)). "[A] meeting of the minds refers to a mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *Mack v. John L. Wortham & Son, L.P.*, 541 Fed. Appx. 348, 362 (5th Cir. 2013) (per curiam) (citing *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 75 (Tex. App. 2010, pet. denied)). "The essential terms must be defined 'with sufficient precision to enable the court to determine the obligations of the parties.'" *Id.* (quoting *New Process Steel, L.P. v. Sharp Freight Sys.*, 2006 WL 947764, at *3 (Tex. App. Apr. 13, 2006, no pet.)).

Childs has not created a genuine issue of material fact on the existence of a valid contract. On January 4, 2014 Billingsley's assistant property manager, Laurie Mensch ("Mensch"), sent the following email to Childs:

> Hi Thomas. Thank you for letting me know. I'm glad you are returning to work soon! Congrats! . . .
>
> Do you know how much of a partial payment you can make? If you can bring your balance under $500 next week, then I can avoid filing eviction on the 10th. Please let me know as I would hate to have to do that after all we've worked through.

D. App. 67. Childs replied:

> Laurie, I'm sorry . . . The 10th? Would you have to file an eviction on such an early date given the fact I have approximately 30 days left on my 13 month lease? I will get paid $640 after requesting payment on the 5th. I will only have $320 after requesting payment on the 19th since I return to work on the 13th. The first paycheck will arrive end of month. Of that I have electricity, cell, car, and cc payments to cover into mid-month. Hence, I'll be completely caught up for both Jan and Feb–on or by—Feb 3rd. My lease being up on the 9th.
>
> Yes, I would have half of the base rent covered most certainly—on or by—Jan 21st, but here again I'm facing late charges on top of $50 return fee for a 2 second mistake from last month, so I have no idea what the balance is going to be.

*Id.* Childs contends that Billingsley's January 4, 2014 offer "was clearly accepted by [Childs] as [he] even mirrored the actual writing of the Defendant's email communication responding with 'Yes' in the second paragraph." P. Br. 15.

The court holds that a reasonable trier of fact could not find that Childs's response to Mensch's January 4, 2014 email evidences his acceptance of Billingsley's offer not to file

an eviction suit if he paid $885.05 (the amount required to bring his balance under $500) by January 10, 2014.  Although Childs replied "Yes" in the second paragraph of his January 4, 2014 email, when considered in context, a reasonable trier of fact could only find that Childs was not accepting the terms of Billingsley's January 4, 2014 offer (i.e., to pay $885.05 by January 10, 2014), but was making a counteroffer (i.e., to pay half of the base rent by January 21).  *See Parker Drilling*, 316 S.W.3d at 74 ("A purported acceptance that changes or qualifies an offer's material terms constitutes a rejection and counteroffer rather than an acceptance." (citation omitted)); *see also Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 512 (Tex. 2014) ("It is well settled that an acceptance must not change or qualify the terms of the offer.  If it does, the offer is rejected." (quoting *United Concrete Pipe Corp. v. Spin-Line Co.*, 430 S.W.2d 360, 364 (Tex. 1968))).  A reasonable jury could not find, based on Childs's response to Mensch's January 4, 2014 email, that Childs accepted Billingsley's offer not to file an eviction suit if Childs paid $885.05 by January 10, 2014.  And Childs does not offer any other evidence or argument in support of his position that he and Billingsley entered into a binding contract.  Accordingly, because Childs has failed to create a genuine issue of material fact on the existence of a contract, Billingsley is entitled to summary judgment dismissing Childs's breach of contract claim.

V

Finally, the court considers Billingsley's motion for summary judgment establishing its breach of contract counterclaim.

A

Billingsley contends that, as of February 1, 2014, after Childs's multiple breaches of the Lease,[7] Childs owed Billingsley a total of $3,270.38. Payments and credits from December 1, 2013 through February 7, 2014 reduced Childs's account balance to $2,170.38. Billingsley has agreed to waive its right to collect a portion of the Lease Debt,[8] but contends that Childs still owes $1,525.40, and seeks summary judgment on its counterclaim, contending that it has established as a matter of law that it is entitled to recover $1,525.40 in damages as a result of Childs's multiple breaches of the Lease.

In response, Childs disputes the charges for unauthorized animals and the charges related to replacing the carpet in his apartment. As for the remaining charges and fees, Childs contends that "[Billingsley] committed the first breach of any 'agreement' between

_____

[7]Billingsley contends that Childs breached the Lease by: failing to pay rent; failing to timely pay rent; failing to pay late charges; giving an insufficient funds check to Billingsley as a rent payment; failing to pay the returned check fee; failing to pay water, sewer, trash removal, and pest control fees; failing to pay parking/garage charges; failing to pay an electric transfer fee; having an unauthorized animal in his apartment for some portion of his residency; failing to pay unauthorized animal fees; damaging his apartment; and failing to pay the charges and fees to clean and repair the damage to his apartment.

[8]Billingsley waives its right to collect the following portion of the Lease Debt: $7.25 electric transfer fee; $387.73 cleaning, trash removal, pet odor control, and carpet replacement charges; and $250.00 unauthorized animal fee.

-13-

the parties that might be the subject of the Counterclaim, and is therefore barred from asserting the action stated in the Counterclaim against [Childs]."  P. Br. 20.

In its reply, Billingsley contends that the only agreement between the parties was the Lease; that its summary judgment evidence establishes that Childs failed to pay and timely pay rent and other charges due under the Lease; and that there is no evidence that it breached the Lease in any respect, much less did so at any time before Childs vacated his apartment rather than face eviction for his breaches of the Lease.

B

Billingsley has produced undisputed evidence[9] that Childs owes $1,525.40 in unpaid rent and other charges.  Childs contends that Billingsley is barred from collecting this amount because Billingsley "committed the first breach of any 'agreement' between the parties that might be the subject of the Counterclaim."  P. Br. 20.  The "agreement" that is the subject of the Counterclaim is the Lease.  There is no suggestion in any of the briefing or evidence in this case that Billingsley breached the Lease.  To the extent Childs contends that Billingsley breached some other agreement, Billingsley has established beyond peradventure that Childs did not accept the terms of Billingsley's January 4, 2014 offer not to file an eviction suit if Childs paid $885.05 by January 10, 2014, or its January 9, 2014 offer not to file an eviction suit if Childs paid $1,202.91 by January 10, 2014, and that Childs never paid either amount.  Accordingly, the court grants Billingsley's motion for summary judgment on

_____

[9]Billingsley has waived its right to collect the portion of the Lease Debt that Childs disputes.  *See supra* note 8.

-14-

its counterclaim for breach of contract.

C

Billingsley contends that it is entitled to prejudgment interest on the sum of $1,525.40 at the contractual rate of 18% per annum from the due date, compounded annually, as stated in ¶ 32 of the Lease, and that the due date was no later than February 26, 2014, the date Childs emailed Billingsley stating that he had received Billingsley's final invoice. Billingsley also seeks attorney's fees for its breach of contract counterclaim, but reserves its request for such fees for separate motion filed within the time permitted by Fed. R. Civ. P. 54. Childs has not responded to either of these requests.

The court agrees that Billingsley is entitled to recover the prejudgment interest that it seeks, and the court will include such an award of prejudgment interest in the judgment.

Billingsley must file a motion for attorney's fees and related nontaxable expenses under Rule 54(d)(2) within the time limit prescribed by Rule 54(d)(2)(B)(i).

*   *   *

For the reasons explained, the court grants Billingsley's motion for leave to amend its answer and counterclaim, grants Billingsley's motion for summary judgment on Childs's claims, and grants Billingsley's motion for summary judgment on its counterclaim. A judgment in favor of Billingsley is being filed contemporaneously with this memorandum

-15-

opinion and order.

**SO ORDERED**.

September 14, 2016.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE